Wayne A. MONTAGUE, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

Feb. 19, 1960.

Rhodes Bratcher, Claude E. Smith, Owensboro, for appellant.

John B. Breckinridge, Atty. Gen., Robert Matthews, Jr., Asst. Atty. Gen., for appellee.

STANLEY, Commissioner.

We sustain the motion of Wayne A. Montague for an appeal from his conviction of involuntary manslaughter with imprisonment in jail for one year.

Montague, Allen and Thomas Raymond were jointly indicted for the murder of Elmer Winters. Allen had been convicted of voluntary manslaughter before the appellant's trial.

The appellant strongly urges that the trial court should have directed a verdict of ac- quittal and, alternatively, that he committed error in giving the instruction on involuntary manslaughter as an aider and abettor of Allen.

Montague and Allen had become acquainted a week or so before Winters was killed. Allen's automobile had been wrecked and Montague had favored his friend by driving him in his car. Early in the evening of April 29, 1957, the young men had visited several taverns drinking only beer, as the appellant testified. Late in the evening they saw two men working with an automobile flat tire near the street in the parking lot of the Turf Club in Owensboro, and they stopped to offer their help. Allen got out of the car; but one of the men, with an oath, told them they did not want their help. There is some indication they feared a "holdup." One of the men cut Allen in the back. Montague and Allen then drove to Raymond's residence, where Allen lived. Allen went inside, told Raymond and his wife of the incident, while Montague stayed on the porch. Raymond suggested that Allen go for the sheriff and take out a warrant for the arrest of the two men. Mrs. Raymond did not want to stay alone, and she joined her husband, Allen and Montague and started out in the latter's car to go, as they all testified, to the sheriff's office. While they were in the house, unknown to Montague, Raymond gave Allen a pistol, which he put in his hip pocket.

As they were passing the Turf Club parking lot, someone in the car said, "Turn in," and the appellant drove into the lot. It was then near midnight. Shortly before this the two men (called the "carnival boys") had asked the proprietor to call a taxicab to take them to their hotel and he had done so. A night watchman testified that neither of the strangers made a move, but one of the men who had driven up got out of the car, advanced upon the strangers and began shooting. The other three persons, according to the night watchman, jumped out of the automobile and ran away from the scene. Both of the "carnival

boys," Winters and Ernest Emard, were killed by bullets admittedly fired by Allen. The Commonwealth proved neither man was armed.

Allen was called as a witness for the Commonwealth. His testimony was that one of the strangers said, "The sons of bitches are back again"; he jerked the car door open, grabbed him, violently fought Allen and cut him across his hand. Someone in the car exclaimed, "They've got a gun." Montague, Raymond and his wife quickly jumped out on the other side of the automobile. The three ran, just as the night watchman had testified. Allen testified he could not get out while being attacked because the back of the front seat had been pushed forward by those getting out of the rear seat. He succeeded in getting the pistol out of his pocket and at first fired through the roof of the car for the purpose of letting his assailants know he had a pistol, thinking they might retreat; but as they kept on with their violence, he then shot at the two men. Winters was shot three or four times. Allen, as a witness for the Commonwealth, insisted that the appellant did not know he had a pistol, and that he had nothing to do with the affray or killing. Meanwhile, Montague, hearing the shots, thought he was being fired upon and lay down in some weeds until he heard the police or ambulance siren. The sheriff testified that Montague told him, "When he drove up there that he knew there was going to be trouble, and he and Mrs. Raymond and Tommy Raymond got out of the car and ran toward the service station."

■ It is, of course, true we have many times held that the trial court should direct a verdict of acquittal where there is no substantial evidence of the guilt of the defendant or where the evidence merely creates a suspicion of guilt. But such directed verdict is proper only where the evidence and logical inferences are susceptible of but one interpretation or conclusion by reasonable men that the accused is not guilty.

■ In the present case, perhaps the letter of the above uncontradicted testimony standing alone did not establish the appellant's guilt of participation in the homicide as charged. But the voices of the victims were not heard. The fact that the appellant had been with the actual slayer at the previous encounter, had driven him home, where he obtained the pistol, and then back to the scene soon thereafter were circumstances from which the jury could well conclude there was concert of action or a common design by Allen and the defendant and that in doing that overt act, he had aided and assisted Allen in the commission of homicide. Motive and malicious intent were inferable from the facts of the earlier affray and the return directly to the scene. The parties need not, of course, have stopped at the parking lot while on the way to the sheriff's office. The jury could reasonably draw the conclusion that this was not an innocent act. The defendant had told the sheriff he knew there was going to be trouble when he drove "up there." It was not necessary that the Commonwealth should have shown there was an arrangement expressly by word of mouth, for such an arrangement may be and is often established by proof of surrounding facts and circumstances. Smallwood v. Commonwealth, 200 Ky. 582, 255 S.W. 106; Daniel v. Powell, 304 Ky. 52, 199 S.W.2d 715. While uncontradicted positive testimony may not be arbitrarily disregarded, such proof may be overcome by circumstantial evidence. Smallwood v. Commonwealth, supra, 200 Ky. 582, 255 S.W. 106; Fyffe v. Commonwealth, 301 Ky. 165, 190 S.W.2d 674; Daniel v. Powell, supra, 304 Ky. 52, 199 S.W.2d 715.

■ We are of opinion the court properly overruled the defendant's motion for a directed verdict of acquittal.

■ We find no evidence authorizing the submission of the case under the instruction on involuntary manslaughter on the theory that Allen had assaulted the deceased without intending to kill him, and that the shoot-

ing resulted from the unintentional or careless use by Allen of the "dangerous weapon," or that the wounds were inflicted by the reckless pointing or flourishing of the pistol, and that the defendant, Montague, had advised or assisted Allen in doing so. Allen testified positively that he had fired through the roof of the car; but when his assailants did not retreat, he had deliberately fired at them in self-defense.

It is a fundamental principle that the instructions to the jury should relate and be confined to issues concerning which evidence has been offered, and in the absence of any evidence tending to establish guilt of any particular degree of homicide which may be included in the charge, the trial court should not give instructions which inject that particular degree of homicide into the case. We think it was error to give the involuntary manslaughter instruction.

Judgment reversed.