Joseph Wayne BOWERS, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Supreme Court of Kentucky.

May 20, 1977.

Rehearing Denied Oct. 7, 1977.

Robert Vic Bowers, Jr., Sage, Carter & Bowers, Louisville, for appellant.

Robert F. Stephens, Atty. Gen., William H. Mohr, Asst. Atty. Gen., Frankfort, for appellee.

JONES, Justice.

Joseph Wayne Bowers appeals from a judgment sentencing him to a 20-year term

of imprisonment pursuant to a jury verdict finding him guilty of murder. KRS 507.-020(1)(a).

Bowers asserts numerous errors in support of his contention that he is entitled to a reversal of the judgment. His claims of error will be discussed in the sequence in which they are presented. However, this court deems it appropriate to summarize the pertinent facts relevant to a proper disposition of the issues.

The evidence reveals that Bowers and Williams were boon companions and fellow workmen. It is noted also that they were drinking partners. They commenced the celebration of New Year's Eve, 1975, at 4:00 P.M. at the American Legion Hall. They remained there some two hours. During that time they consumed several drinks of alcoholic beverages. From 5:45 P.M. until 6:00 P.M. they engaged in an argument. According to the bartender, Williams stated: "Joe, I wasn't the one that done it," or "I didn't do that." Joe said: "Larry, you are the only one that could have done it." Shortly after 6:00 P.M. they left the American Legion Hall.

Bowers and Williams next appeared at the house of a mutual friend at 7:15 or 7:30 P.M. Their friend was not at home. Other members of the family and a guest were present. Bowers and Williams remained at the friend's house approximately 30 minutes. They departed at approximately 7:45 P.M.

Sometime between 7:45 and 8:30 P.M. the New Year's Eve celebration ended abruptly. Some travelers observed the body of a man lying face down on Highway 175. They went to a house nearby and called the sheriff. He received the call at 8:30 P.M. A witness testified that at approximately 8:00 P.M. she saw the lights of an automobile at the place where Williams' body was found. The automobile remained there from 5 to 7 minutes.

The sheriff, a state detective and other officers arrived on the scene shortly after receiving the call. They found Williams lying face down beside the highway. He had been shot on the left side of his head above his left ear. His body was warm, but they found no vital signs. In the meantime, Bowers returned to his friend's house around 9:00 P.M. He was asked the whereabouts of Williams. Bowers stated that he took Williams to his truck which was parked in Greenville. He testified that some stranger was waiting for Williams. After waiting "about a minute" Bowers left and returned to the friend's home.

Because Williams was last seen in the company of Bowers forty-five minutes before his death was reported, the authorities attempted to locate Bowers. At 3:25 A.M. Bowers came to the courthouse where an investigation of Williams' death was in progress. He was interrogated by the sheriff, and a state detective. Bowers was told three times by the detective that he didn't have to give consent to search his car. These statements were made in the presence of the sheriff, Commonwealth's Attorney and others. The officers indicated that a search warrant could be obtained, but that it would take time. Bowers asserted that he had nothing to hide. The uncontradicted evidence of the officers was that Bowers consented to the search of his automobile.

On New Year's Day, 1976, at daybreak, the detective and sheriff searched Bowers' automobile. They found blood and some human tissue on the front seat on the passenger's side of the automobile. They also found a quantity of blood on the headrest of the seat. Williams' personalized checkbook was found on the floor near the right door of the vehicle.

A laboratory technician testified that the blood and tissue found on the car seat and the headrest was human blood. He described the blood as group "O" type. On cross-examination, he testified that he conducted an examination of a liquid tube of blood that was taken from Williams' body. For reasons incomprehensible to this court, the technician was not asked by the prosecutor or defense counsel the type of Williams' blood.

■ Bowers' first claim of error is that the trial court should have sustained his motion to suppress the evidence found in his automobile. He argues that the search was illegal, and violative of his constitutional rights against unlawful search and seizure. Bowers asserts that the conversation which elicited his consent was subtly coercive. There is not a shred of evidence to support Bowers' contention. On the contrary, the evidence presents a painstaking effort by the authorities to fully inform Bowers of his rights and his options. There was no overt act or threat against Bowers, proved or claimed. There were no promises made and no indication of any subtle forms of coercion that might flaw his judgment. Bowers was not under arrest until after the search was conducted. The officers who conducted the investigation all testified that Bowers consented to the search and continued to assert he had "nothing to hide."

The Supreme Court of the United States held that a consent search is a constitutionally permissible and wholly legitimate aspect of effective police activity.

"Nor can it even be said that a search, as opposed to an eventual trial is somehow 'unfair' if a person consents to a search. While the Fourth and Fourteenth Amendments limit the circumstances under which the police can conduct a search, *there is nothing constitutionally suspect in a person's voluntarily allowing a search.*" (Emphasis added). *Schneckloth v. Bustamonte*, 412 U.S. 218, 243, 93 S.Ct. 2041, 2056, 36 L.Ed.2d 854 (1973).

It is true that Bowers had consumed alcoholic beverages prior to Williams' death. The officers knew that. However, the evidence reveals that Bowers was not intoxicated. He drove his automobile to the courthouse. There is no evidence to indicate that Bowers was sufficiently under the influence of alcohol so as to impair his mental state to the extent that he was incapable of giving consent to the search of his automobile. Hence, the trial court did not err in admitting the evidence obtained as a result of the search.

Bowers' second contention of error is that the Commonwealth's Attorney misrepresented the testimony of an expert witness in his closing argument to the jury. The statement upon which the claim was based is:

"So we get down to the real heart of this case. The technician from Frankfort told you that this was type 'O' blood removed from that seat. He also told you that the vial of blood taken from Larry's body at the funeral home up there with all this other stuff was type 'O' blood. That was Larry Williams' blood, Joe."

■ This court has recognized the impropriety of an attorney's argument of matters outside the record. It is true that the Commonwealth's Attorney failed to ask the technician the type of blood contained in the vial taken from Williams' body. However, counsel for Bowers failed to object to the argument until after the case was submitted to the jury and they were proceeding to the jury room. An objection, to be timely, must be promptly interposed. RCr 9.22. The objection was untimely, and is not preserved for appellate review. In view of the weight of the evidence, plus the fact that the jury imposed the minimum sentence, error, if any, was non-prejudicial. *Ferguson v. Commonwealth*, Ky., 512 S.W.2d 501 (1974).

■ Bowers next complains that the trial court should have submitted to the jury his tendered instructions on lesser included offenses. Certainly the fair and efficient administration of justice requires that where a reasonable inference can be gleaned from the evidence that the defendant in a murder case is guilty of a lesser crime, then proper instructions should be submitted to the jury on such lesser offenses. *Moore v. Commonwealth*, Ky., 489 S.W.2d 516 (1972). However, where the totality of the evidence and circumstances such as presented in this case establishes an intentional murder or nothing the court is not required to instruct on lesser offenses because there is nothing upon which to base them. *Elmore v. Commonwealth*, Ky., 520 S.W.2d 328 (1975). Bowers was the last person seen with Wil-

liams while he was still alive. Bowers and Williams left a friend's house at 7:45 P.M. on New Year's Eve. A witness who lives in the house nearest to where the body was found observed an automobile with its lights on stopped on the highway. That was about 8:00 P.M. The automobile remained there anywhere from five to seven minutes. There was testimony that within a brief span of time from the witness' observation of the automobile stopped on 175, the travelers who found the body of Williams notified the sheriff. He testified he received the call at 8:30 P.M.

The physical evidence against Bowers is overwhelming. The officers discovered Williams' checkbook between the seat and the passenger side door. A clump of human dermal tissue about the size of a "pencil eraser" was also found on that seat. There is also the unimpeached testimony of the existence of human blood on the seat and the passenger side headrest of Bowers' automobile. Finally, there is the nature of the wound which caused Williams' death. The shot was at close range. The bullet entered just over the left ear and passed through the brain until it stopped below the surface of the right ear. By the nature of the wound it is obvious that Williams was shot without warning. There was no evidence that a struggle had taken place. Bowers did not testify in his behalf.

This court finds no conflicting circumstantial evidence. All inferences indicate that Bowers was not entitled to instructions on lesser included offenses. Counsel for Bowers argues that Williams was Bowers' true and trusted friend. There was testimony that Bowers' motive for this brutal slaying was jealousy over a wife's suspected infidelity.

A mutual friend of Bowers and Williams told of a trip they made to Hopkinsville, Kentucky. This was some four or five weeks previous to Williams' death. Upon their return to Greenville, the friend was privy to an argument between Bowers and Williams. He testified: "They were talking and Larry slid upon the back seat and told Joe, says, I didn't do it. I don't give a damn what that bitch said," and Joe says, "I know damn well you did." There is an inference that some deep-seated prejudice existed between Bowers and Williams. A feeling of hostility was activated, particularly when they were drinking. Good friends sometimes disagree. This is often the case when they seek courage by imbibing alcoholic beverages. Inhibitions are left behind, and the truth bursts forth as blossoms after a spring rain.

The first recorded argument that resulted in homicide was between brothers, not friends. Cain was so infuriated, and his hostility toward his brother Abel was such that he murdered him. If Cain had been tried and convicted according to present-day standards, and had prosecuted an appeal he probably would have contended that he was entitled to a directed verdict. He might also have contended that all the elements of the crime had not been proven. Perchance, he would have insisted that he was entitled to instructions on lesser degrees of the crime. However, Cain's punishment was swift and certain. The Creator pronounced a curse upon him, "And Cain went out from the presence of the Lord, and dwelt in the land of Nod, on the east of Eden."[1]

Finally, Bowers argues that he was entitled to a directed verdict. This court is not persuaded by that argument. A motion for a directed verdict challenges the sufficiency of the evidence. The criterion of this court is that:

" . . . If the totality of the evidence is such that the judge can conclude that reasonable minds might fairly find guilt beyond a reasonable doubt then the evidence is sufficient, albeit circumstantial." *Carmen v. Commonwealth*, Ky., 490 S.W.2d 744 (1973).

This court is of the opinion that there was an abundance of competent, probative evidence sufficient to sustain the conviction. The court is unwilling to substitute its judgment for that of a properly instruct-

1. The Bible, Genesis, Ch. 4.

ed jury who heard all of the evidence and the proceedings of the trial.

The judgment is affirmed.

All concur.