Douglas WARD, Appellant,

v.

COMMONWEALTH of
Kentucky, Appellee.

Supreme Court of Kentucky.

May 23, 1985.

Rehearing Denied Sept. 26, 1985.

Rodney McDaniel, Asst. Public Advocate, Frankfort, for appellant.

David L. Armstrong, Atty. Gen., Eileen Walsh, W. Bruce Cowden, Jr., Asst. Attys. Gen., Frankfort, for appellee.

GANT, Justice.

Appellant herein was found guilty of one count of conspiracy to commit first degree robbery and two counts of first degree robbery; he was sentenced therefor to a total of 50 years imprisonment. Additionally, he was found guilty of capital murder in the death of Lucy Asher during a first degree robbery and received the death penalty. It is the murder conviction which is the principal point of concentration in appellant's disputation before this court. The death of Mrs. Asher occurred during an ambush robbery when she was brutally slain by shots fired by appellant as she drove her truck down a road.

The first allegation of error we will review is the failure of the trial court to instruct on certain lesser included offenses to the offense of murder. The law in this

Commonwealth is clearly set out in *Kelly v. Commonwealth*, Ky., 267 S.W.2d 536, 539 (1954):

> In a criminal case it is the duty of the court to prepare and give instructions on the whole law and this rule requires instructions applicable to every state of case deducible or supported to any extent by the testimony.

▇▇▇ In the current case, appellant moved the court to instruct on wanton murder, second degree manslaughter and reckless homicide, which motion was denied. Failure to instruct on wanton murder as defined in KRS 507.020(1)(b) could hardly be deemed error, as this offense still constitutes a capital offense, but it should have been included to contrast with the other offense, manslaughter in the second degree (KRS 507.040). Omission of the instruction on manslaughter in the second degree was reversible error. There was no theory of the case advanced to justify an instruction on reckless homicide, which involves failure to perceive of danger, as set out in KRS 501.020(4).

It is not argued that the evidence did not justify an intentional murder instruction, nor could it be. However, the evidence in this case was also that, although the robbery of Mrs. Asher was planned, there was no scheme to kill her. In fact, the evidence was that the plan called for shooting out the tires of her truck in which she was killed in order to stop the truck. Further, there was evidence from the fellow conspirators that the appellant, immediately after the shooting, shouted that the gun had gotten away from him. There was also testimony about the use by appellant of drugs and alcohol on the day of the incident. Under the conclusions which are "deducible" from the evidence or "supported" by the evidence, it was clearly erroneous to fail to include the requested instruction on second degree manslaughter. It is regrettable that the lower court denied the motion for such instruction or that the prosecution objected to it, as the probability of a different result is small. However, we are averse to categorizing such an error as harmless, especially in a case where the death penalty resulted.

▇▇▇ While considering allegations of errors in the instructions, we note that appellant protests the omission of the "extreme emotional disturbance" qualification in the murder instruction given. His assigned basis for this protest is the evidence concerning the use of drugs and alcohol, but we are not aware of or cited to any case where this type of evidence, standing alone, would trigger such a qualifying instruction. The other assigned errors concerning the instructions are without merit.

▇▇▇ Appellant asserts it was erroneous to exclude opinion testimony by an expert who was a psychiatrist/pharmacologist, and who would have testified concerning the effect of certain drugs taken alone or in combination with alcohol as this effect related to the question of intent to commit murder. It is apodictic that the admission of expert opinion testimony is conditioned upon laying a proper foundation by competent evidence. Herein, the appellant declined to testify, so there was no evidence from him concerning the type, amount, concentration or frequency of use of such drugs, or of their effect. The other participants in the robbery and murder testified in vague generalities on the subject, and their evidence on effect was of no import or assistance. In light of the deficiencies in proper foundation, the exclusion of the expert testimony was correct. *Cf. Hodge v. Commonwealth*, 289 Ky. 548, 159 S.W.2d 422 (1942).

▇▇▇ Appellant contends it was reversible error for the trial judge to fail to comply with KRS 29A.100, which mandates that the trial judge who excuses a juror from service "determine whether the prospective juror is disqualified for jury service" under the statutory grounds and "enter this determination ... on the jury determination form" provided by KRS 29A.070. It is undisputed that the trial judge had not complied with the statute prior to the motion to be furnished with the list and, despite repeated assurance of ex post facto

compliance, no data was ever compiled or furnished to appellant's attorney. Inasmuch as we are reversing on other grounds, we do not reach the significance of this error but direct that on retrial and in other cases this statute should be complied with.

■ The next assignment of error concerns the failure of the trial court to excuse, for cause, three jurors who were related to the Commonwealth's Attorney in varying degrees. Two of these jurors were an ex-brother-in-law and a distant cousin. The other was described to us as "sort of an uncle" about whom the Commonwealth's Attorney stated he had always been told the man was his uncle. We feel the law is well stated in *Commonwealth v. Stamm*, 286 Pa.Super. 409, 429 A.2d 4, 7 (1981):

> [I]rrespective of the answers given on voir dire, the court should presume the likelihood of prejudice on the part of the prospective juror because the potential juror has such a close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses.

■ Once that close relationship is established, without regard to protestations of lack of bias, the court should sustain a challenge for cause and excuse the juror. We have no fault to find in regard to the ex-brother-in-law or even the distant cousin and we trust that, under this statement of principle, no uncles will survive the challenge for cause on retrial.

■ Appellant argues that it was reversible error to exclude or limit his questioning of the jury panel on voir dire. The circumstances of this particular allegation of error were that the Commonwealth Attorney informed the jury that one of the witnesses for the prosecution was a participant in the crimes with whom he had made a "deal" in exchange for his testimony. He then asked whether this fact would prevent any juror from giving to the Commonwealth a fair and impartial trial. No promise to not consider this "deal" was ever exacted from the panel. Thereafter, during his voir dire, counsel for appellant asked the jury if they could consider the "deal" in assessing the credibility of the witness and even went so far as to say to the jury, "You have a right as a jury, if you are selected as a juror, to hold those deals against the Commonwealth." Objection to this question and statement was sustained, and the jury was admonished not to consider it.

■ The trial judge has broad discretion in the area of questioning on voir dire. Generally speaking, questions of jurors in criminal cases should be as varied and elaborated as the circumstances require, the purpose being to obtain a fair and impartial jury whose minds are free and clear from all interest, bias or prejudice which might prevent their finding a just and true verdict. Notwithstanding, questions are not competent when their evident purpose is to have jurors indicate in advance or commit themselves to certain ideas and views upon final submission of the case to them. *See* Annotations: 73 A.L.R.2d 1187; 99 A.L.R. 7. We find no abuse of discretion by the trial judge in this instance.

■ At the penalty phase of the trial, the Commonwealth committed a grievous error by repeatedly minimizing the responsibility of the jury in assessing the death penalty. We are totally aware that the statute relating to capital offenses—KRS 532.025(1)(b)—provides that the jury shall *"recommend* a sentence for the defendant." However, the death penalty cannot be assessed by any judge unless recommended by the jury, so the responsibility of the jury in such cases remains undiminished.

In this light, let us examine the words of the prosecutor in his closing argument:

> ... it is only a recommendation. If you recommend it and if the court sees fit here to sentence the man to death and if after automatic review by the Supreme Court ...

If, after various other appeals and if after the Governor signs the death warrant ...

If you were to decide to recommend, and it is only, I want to point this out again to you, a recommendation ...

If we do [get the recommendation] it [the death penalty] may very well not [happen].

█ In short, the prosecutor clearly sought to divert from the minds of the jurors their true responsibility in this case by implying that the ultimate responsibility would fall to the trial judge, this court, other appellate courts, or to the Governor. This is clearly an error of reversible magnitude. It is the responsibility of each juror to decide whether the defendant will be executed, and they shall not be informed, either directly or by implication, that this responsibility can be passed along to someone else. The mere fact that the statute provides for jury recommendation cannot be utilized as a license to induce the jury to disregard its responsibility. *Cf. Fleming v. State*, 240 Ga. 142, 240 S.E.2d 37 (1977); *Hawes v. State*, 240 Ga. 327, 240 S.E.2d 833 (1977); *State v. Tyner*, 273 S.C. 646, 258 S.E.2d 559 (1979); *State v. Gilbert*, 273 S.C. 690, 258 S.E.2d 890 (1979).

█ Also, should any inadvertent reference implying a diminution of the jury's duty in fixing a death penalty creep into any case, the trial judge should immediately inform the jury that their duty to fix the death penalty should be considered as if there were no possibility of review by any source.

█ It is our further opinion that, upon retrial, should conviction of capital murder result, the trial court at the sentencing phase should admit proffered evidence that appellant had never been convicted of a crime of violence. See *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978).

We have carefully examined all other assignments of error by appellant, and find no merit in them, nor do we find any asser-tion of error meritorious which would preclude retrial for capital murder.

We affirm the conviction of appellant for conspiracy to commit first degree robbery and for two counts of first degree robbery. We reverse the conviction for murder and remand this case for a new trial consistent with this opinion.

STEPHENS, C.J., and AKER, GANT, LEIBSON and VANCE, JJ., concur.

LEIBSON, J., files a concurring opinion in which VANCE, J., joins.

STEPHENSON and WINTERSHEIMER, JJ., dissent, with each filing separate dissenting opinions.

LEIBSON, Justice, concurring.

I concur in the majority opinion. However, I would add that it is time to correct the practice of describing the jury's duty in death penalty cases as being to *"recommend a sentence for the defendant,"* in voir dire, instructions, argument, or elsewhere.

Continuously we are confronted by the fact that these words are used before the jury to minimize its responsibility in deciding on the death penalty. Sometimes we side step the problem by saying that the word was not overused, and sometimes, as in the present case and in *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984), we recognize that the prejudice is too serious to ignore. As stated in *State v. Willie*, 410 So.2d 1019, 1034 (La.1982), "the message [is] that the jurors' awesome responsibility is lessened by the fact that their decision is not the final one."

While it is true that KRS 532.025(1)(b) provides that the jury shall "recommend a sentence for the defendant," the fact is when the jury votes the death penalty, it is much more than merely a recommendation. Unless the jury so recommends, the trial judge cannot impose such a sentence. If the jury so recommends, almost without exception the trial judge has followed the jury's recommendation by imposing the death penalty.

RCr 9.84, titled "Penalty," recognizes the true nature of the jury's function. It provides "(1) When the jury returns a verdict of guilty it shall *fix* the degree of the offense and the penalty...." (Emphasis added). At all stages of the trial we should require that counsel and the court use the word "fix" as provided in RCr 9.84, rather than the word "recommend" which is misleading.

Further, we should order that, prospectively, the forms of verdict provided to the jury to use upon a finding of guilty should provide "and fix the defendant's punishment at _____," rather than using "and recommend a punishment of _____."

In short, once and for all, we should get rid of the unfair prejudice inhering in use of the word "recommend" to describe the jury's function in setting a penalty.

VANCE, J., joins in concurring opinion.

STEPHENSON, Justice, dissenting.

I cannot agree that this case should be reversed for a new trial for the reason that a second-degree manslaughter instruction was not given. The plan for shooting out tires and evidence that there was no scheme in advance to kill the victim are irrelevant to the instruction. The one phrase attributed to Ward that the gun had gotten away from him is simply not enough to justify the instruction. Ward did not testify, which creates some problem in ascertaining the defendant's theory of the case which should always be presented in the instructions. The defendant's theory of the case is another way of saying the duty of the court is to give the whole law of the case as supported by testimony. In looking at all the factors here, there is no justification for this court to conjure up a theory of the case for Ward. The testimony also shows that the victim was left to die on the roadside, while Ward bragged he had killed her and that he later stated he "had to blow the bitch away." The testimony was that Ward shot right into the truck and kept shooting. There were nine bullet holes in the truck. There was no theory of the case presented by Ward.

This scenario simply does not justify a requirement that a second-degree manslaughter instruction be given. There is nothing in the testimony to raise a reasonable doubt as to whether Ward intended to kill the victim. There is not even a possibility that a jury, presented with the testimony in this case, would return a verdict of second-degree manslaughter. To illustrate, any likelihood the jury would be disposed to a lesser punishment is negated by the jury's passing up the opportunity to fix Ward's punishment at life or twenty years or more.

I also strongly disagree with the direction in the majority opinion which makes a radical change in automatic strikes for cause in selecting a jury. I would stay with our present system of applying this automatic strike only to close relatives of the parties. Including relationship to lawyers, witnesses, etc., is unwarranted. We should rely on voir dire and peremptories to handle this matter. This enlargement of the presumption of bias or prejudice will be a real trouble-maker.

As to the assertion of minimizing the responsibility of the jury in recommending the death penalty, I consider that the Commonwealth went too far, but that this was not reversible error. In looking at the voir dire with the *Witherspoon* requirements and defense counsel stating "it is up to each one of you as an individual whether to recommend this man be electrocuted with 1900 volts," I do not believe the jury could reasonably have felt its responsibility was diminished.

I agree with the majority opinion in the suggestion that the trial court inform the jury of its duty should there be any suggestion that the responsibility of the jury is diminished.

Also, I feel I should comment on the concurring opinion. While it may be desirable that the word "recommend" not be used, the statute contains the word, and the jury cannot *fix* the death penalty; the jury can only recommend. RCr 9.84 is not applicable to death penalty cases. This

suggested change should be directed to the legislature.

Accordingly, I dissent.

WINTERSHEIMER, Justice, dissenting.

I must respectfully dissent from that part of the majority opinion which reverses and remands the conviction of Ward for capital murder.

The trial judge did not commit reversible error in refusing to strike for cause three jurors who were or had been remotely related to attorneys for the prosecution because there was no showing of any bias or partiality on the part of the three prospective jurors. The questioned jurors were ultimately eliminated by exercise of a peremptory challenge. Consequently, no prejudice of any kind resulted so as to affect the ultimate verdict.

One juror did not know what the supposed relationship was and stated that there was "a little relation" through one side of the family. There was no evidence that the remote relationship would have any effect on the jurors' deliberations and the motion for an excuse for cause was properly overruled.

Another of the prospective jurors had previously been a brother-in-law to the prosecuting attorney, but they were no longer brothers-in-law and had not been so for many years. The juror stated that the previous relationship would have no bearing on his deliberations.

Relationship alone does not ordinarily disqualify a juror. It is incumbent on the party claiming a bias or partiality to prove the existence of prejudice. *See Polk v. Commonwealth*, Ky.App., 574 S.W.2d 335 (1978).

It is clear that none of the three jurors had any kind of a close relationship with the attorneys for the prosecution. There was no evidence of any partiality on their part. There was no abuse of discretion and I believe it is improper to state that the trial judge was clearly erroneous in his determination. This ground is very flimsy to reverse a murder conviction. The mere fact that the better practice may be to eliminate jurors who have some relationship is not sufficient to overturn this conviction.

The trial judge did not commit reversible error in not instructing on wanton or reckless conduct. There was no evidence indicating that Ward was guilty of any offense other than intentional murder. Where the evidence and circumstances establish an intentional murder or nothing, the trial judge is not required to give additional instructions. *Bowers v. Commonwealth*, Ky., 555 S.W.2d 241 (1977); *Cox v. Commonwealth*, Ky., 491 S.W.2d 834 (1973); *Montague v. Commonwealth*, Ky., 332 S.W.2d 543 (1960).

The evidence clearly indicates that Ward shot to kill Lucy Asher during the carefully planned ambush and robbery. He aimed and fired his AR–15 rifle on the victim ten to twelve times, inflicting fatal wounds. There is absolutely nothing in the evidence to indicate that the murder was unintentional and there was no basis for a wanton or reckless instruction.

Approximately three weeks before the brutal murder of Lucy Asher, three of the other co-conspirators had attempted to ambush her but had failed when she courageously drove around a log blocking the roadway. On the fatal day there were no warning shots fired but a simple, deliberate, vicious act ·fully intended to kill the victim which, indeed, did succeed. There is no evidence that Ward shot Lucy Asher without intending to kill her or that her wounds were unintentionally or accidentally inflicted. The instructions of the trial court were proper. *Garrett v. Commonwealth*, Ky., 560 S.W.2d 805 (1977).

The use of the word recommendation in reference to other post-conviction steps was not reversible error. Certainly the jury's sentence is a recommendation pursuant to clear statutory Kentucky law which is codified in KRS 532.025. This Court has taken a proper position in regard to complaints about "recommendation" in *Ice v. Commonwealth*, Ky., 667 S.W.2d 671 (1984). In that case, the Court indicated

that undue emphasis on a recommendation is improper if it diminishes the jury's sense of responsibility.

In this case the prosecution mentioned the seriousness of the matter that the jury was considering and the defense advised them that the recommendation could result in the accused being electrocuted with 1900 volts. The defense counsel pointed out the seriousness of the penalty so strongly as to elicit an objection from the prosecutor.

It should also be noted that after hearing the evidence, the jury recommended a sentence of 40 years for the murder of Lucy Asher as to the co-defendant and the death sentence for said murder as to Ward. This suggests that the jury quite carefully assessed the evidence and considered its responsibilities very intelligently in this regard without undue emphasis and without necessarily accepting the flamboyant comments of either prosecutor or defense counsel.

I would affirm the conviction in all respects.