# IMPORTANT NOTICE
# NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT.  OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 24, 2022
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2020-SC-0485-MR

JAMES CROUCH                                                     APPELLANT

V.                       ON APPEAL FROM WARREN CIRCUIT COURT
HONORABLE STEVE ALAN WILSON, JUDGE
NO. 20-CR-00746

COMMONWEALTH OF KENTUCKY                              APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**<u>AFFIRMING</u>**

James Crouch was convicted of trespassing in the first degree, burglary in the second degree, and being a persistent felony offender in the first degree by a Warren County jury. He was sentenced to a total of twenty years' imprisonment. He now appeals to this Court as a matter of right. *See* KY. CONST. § 110(2)(b). After careful review of the record and arguments of the parties, we affirm the Warren Circuit Court.

## I. BACKGROUND

In the early morning of August 13, 2019, Alice Waddell, who lived in Bowling Green, awoke in her bed to find a white man whom she did not know standing in her bedroom. This man was of medium height, had dark hair, and

was wearing a black or dark color t-shirt with a lighter color image or writing on it. As she reached for her cell phone, the man grabbed it before she could get to it. He did not threaten Waddell and did not hurt her. However, he either said that there were other women in the area who might get hurt or said that there were women in the area who were in danger. Waddell convinced the man to leave, and she escorted him out of the home.

Waddell's neighbor, Jonathan Bryant, had a surveillance camera that pointed partially at the back of Waddell's house. Footage from this surveillance camera showed a man go over Waddell's fence just after midnight on August 13. The man climbed on Waddell's roof, removed a window screen, and went into Waddell's apartment through a second-floor window. The man remained in Waddell's apartment for four to five minutes before leaving through the same window. As he was leaving her property, the man threw the window screen over the fence. Approximately forty minutes later, the same man reentered the apartment through the same window. The camera footage does not show the man leaving, presumably because Waddell escorted him out of the front door of her home. Waddell's son testified that he subsequently found the window screen in a dumpster behind Waddell's apartment and provided it to the police.

The Bowling Green Police Department posted a portion of Bryant's surveillance camera footage on Facebook and other social media outlets seeking tips to identify the man who entered Waddell's apartment. Tips came in identifying the man as various people. At least two tips came in identifying the man as Appellant, James Crouch. Police also received tips from people who

2

believed they had interacted with the man on the video in the hours before the incident but did not know his name. Two of these people were Cody Pruitt and Taylor Curtis. Pruitt worked in a downtown Bowling Green office building and believed he briefly spoke to the man shown in Bryant's surveillance video in the lobby of his office building in the early evening of August 12. Curtis worked at a downtown Bowling Green law firm, which was located near where Pruitt worked. She believed the man shown in Bryant's surveillance video came into the law office asking if they did criminal legal work.

Police obtained surveillance video from Pruitt's office building showing a man in the lobby between approximately 7:00 p.m. and 8:00 p.m. on August 12. In that video, the man spoke to the camera asking for a criminal lawyer to come speak with him. The man was wearing shoes and a shirt that were similar to those worn by the man in Bryant's surveillance video. He also had a white towel or t-shirt over his shoulder. The man in Bryant's surveillance video had a similar item hanging out of his pocket. Finally, the man in the office building video had a face tattoo and arm tattoos that appeared similar to those on the man in Bryant's surveillance video.

Detective Matthew Wheat interviewed Crouch. Crouch admitted to police that he was the man in the office building video but refused to talk about the incident at Waddell's apartment. He also made a comment about "women being forced into things and taken away from their husbands." Detective Wheat believed this comment was similar to the comment made to Waddell by the man who entered her apartment.

3

Crouch was eventually indicted on two counts of burglary in the second degree (one for each entry into Waddell's apartment), tampering with physical evidence, and being a persistent felony offender in the first degree. He was convicted by a Warren County jury of one count of the lesser-included offense of trespass in the first degree, one count of burglary in the second degree, and being a persistent felony offender in the first degree. He was sentenced to twenty years' imprisonment, consistent with the jury's recommendation. We discuss additional facts as needed for our analysis.

## II. ANALYSIS

Crouch alleges the trial court committed five errors. First, he alleges the trial court erred in denying his motion for a directed verdict on the charges of burglary in the first degree. Second, he alleges the trial court erred in allowing the lead detective to identify Crouch as the person on the surveillance video footage outside of Waddell's apartment. Third, he argues the trial court erred in denying his motion to strike for cause a juror whose son was a Bowling Green Police officer. Fourth, he argues the trial court erred in failing to provide a representative jury. Finally, Crouch alleges cumulative error. We address each allegation in turn.

### A. Directed verdict

Crouch's first allegation of error is that the trial court should have granted his motion for a directed verdict on the charges[1] of burglary in the

---

[1] To the extent Crouch argues the trial court erred in denying his motion for a directed verdict on the first count of burglary, we will not review the issue. The jury found Crouch not guilty of the first count of burglary and instead found him guilty of

second degree. This issue was preserved by Crouch's motion for a directed

verdict at the close of the Commonwealth's case.

In *Commonwealth v. Benham*, we explained:

> On a motion for directed verdict, the trial court must draw all fair
> and reasonable inferences from the evidence in favor of the
> Commonwealth. If the evidence is sufficient to induce a reasonable
> juror to believe beyond a reasonable doubt that the defendant is
> guilty, a directed verdict should not be given. For the purposes of
> ruling on the motion, the trial court must assume that the
> evidence for the Commonwealth is true, but reserving to the jury
> questions as to the credibility and weight to be given to such
> testimony.

816 S.W.2d 186, 187 (Ky. 1991). "To defeat a directed verdict motion, the

Commonwealth must only produce 'more than a mere scintilla of evidence.'"

*Lackey v. Commonwealth*, 468 S.W.3d 348, 352 (Ky. 2015) (quoting

*Benham*, 816 S.W.2d at 187). Finally, "[o]n appellate review, the test of a

directed verdict is, if under the evidence as a whole, it would be clearly

unreasonable for a jury to find guilt, only then the defendant is entitled to a

directed verdict of acquittal." *Benham*, 816 S.W.2d at 187.

Under KRS 511.030(1), "[a] person is guilty of burglary in

the second degree when, with the intent to commit a crime, he knowingly

enters or remains unlawfully in a dwelling." Crouch argues that the

Commonwealth failed to meet its burden of proving that he had the intent to

commit a crime at the time he entered or was inside of Waddell's apartment.

---

trespass. Any error by the trial court in denying his motion for directed verdict on this
count would be harmless.

"It is well-settled that a jury may make reasonable inferences from the evidence." *Blades v. Commonwealth*, 957 S.W.2d 246, 250 (Ky. 1997) (citations omitted). This Court has previously stated, in the context of whether a defendant is entitled to a jury instruction on the lesser-included offense of trespass in the first degree, that

> [o]rdinarily, the Commonwealth need only show that the defendant entered or remained in the dwelling unlawfully. This showing permits the jury to infer intent to commit a crime. . . . Cf. *Patterson v. Commonwealth*, 251 Ky. 395, 65 S.W.2d 75 (1933), which illustrates the long-standing rule in burglary cases that proof of the act of entering creates the inference of criminal intent.

*Commonwealth v. Sanders*, 685 S.W.2d 557, 559 (Ky. 1985).

In the case at bar, viewing the evidence as a whole, it would not be clearly unreasonable for a jury to believe Crouch possessed the intent to commit a crime when he entered or remained in Waddell's residence. The Commonwealth presented evidence that prior to going into Waddell's residence, Crouch approached two different building doors and looked into a car in a suspicious manner. It presented evidence that Crouch jumped over Waddell's locked back fence to gain access to Waddell's property. The Commonwealth also presented evidence that Crouch removed a window screen in order to gain entry into Waddell's apartment and then threw the screen over the fence and disposed of it in a dumpster. The Commonwealth presented evidence that Crouch entered Waddell's residence for approximately five minutes, left the residence, and entered again approximately a half hour later. The jury could infer that after this first foray into Waddell's apartment, Crouch knew the apartment was occupied by a single woman, that the occupant was sleeping,

6

and that the apartment was full of belongings, many of which could be easily carried away.

Further, each time he entered and exited the residence (other than his final exit when he was escorted out the front door by Waddell), Crouch used the second-floor window instead of a door. Crouch also took Waddell's phone when she reached for it, and he asked her not to call the police. This, by itself, could have been a crime.[2] Although he did not directly threaten Waddell, Crouch stated that other women in the area may be in trouble, which could have been perceived as an implicit threat. Finally, all of this occurred after midnight when Waddell was sleeping, and Crouch likely knew she was sleeping based on his first entry into the apartment. All of this evidence, when taken together, was sufficient to allow a reasonable jury to infer that Crouch entered or remained in Waddell's apartment with the intent to commit a crime. Accordingly, the trial court did not err in denying his motion for a directed verdict on the burglary charge.

**B. Identification of Crouch on the video**

Crouch next argues that the trial court erred in allowing Detective Matthew Wheat, the lead detective on the case, to identify Crouch as the person shown on Bryant's surveillance video. Crouch argues that this testimony improperly went to the ultimate issue in the case and invaded the

---

[2] KRS 438.210 makes it illegal to "willfully and maliciously prevent[], obstruct[] or delay[] the sending, transmission, conveyance or delivery in this state of any message, communication or report through any telegraph or telephone line, wire or cable."

fact-finding function of the jury. Before reaching the merits of his argument, however, we must determine whether this issue was properly preserved.[3]

Prior to trial, Crouch filed a motion in limine to prevent any witness from identifying Crouch as the person shown on Bryant's surveillance video. The trial court granted Crouch's motion as it related to law enforcement—ruling that no law enforcement witnesses could identify Crouch on Bryant's surveillance video. However, when Det. Wheat identified Crouch during his testimony at trial, Crouch failed to make a contemporaneous objection. Crouch asserts that his motion in limine was sufficient to preserve the issue for appeal. The Commonwealth, on the other hand, argues that a contemporaneous objection was necessary.

Kentucky Rule of Criminal Procedures (RCr) 9.22 requires that a party make a contemporaneous objection to preserve an issue for appeal. This rule was modified, but not repealed, by Kentucky Rule of Evidence (KRE) 103(d), which states, "A motion in limine resolved by order of record is sufficient to preserve error for appellate review." *MV Transp., Inc. v. Allgeier*, 433 S.W.3d 324, 331 (Ky. 2014). We have repeatedly held that "while a motion in limine is a proper means for bringing evidentiary issues to the trial court's attention, the contemporaneous objection rule was still alive and well." *Jenkins v. Commonwealth*, 607 S.W.3d 601, 611–12 (Ky. 2020) (citing *Lanham v. Commonwealth*, 171 S.W.3d 14, 20–21 (Ky. 2005)). "[T]he critical point in

---

[3] Although Crouch argues that this issue was preserved, he also seeks palpable error review if we find it unpreserved.

preservation of an issue remains: was the question fairly brought to the attention of the trial court." *Allgeier*, 433 S.W.3d at 331 (citing *Davis v. Commonwealth*, 147 S.W.3d 709, 722–23 (Ky. 2004)).

In *Allgeier*, the trial court made a pretrial ruling that a certain piece of evidence could only be admitted to impeach a witness's credibility but did not specifically address whether the evidence could be used as substantive evidence. *Id.* at 330–31. However, during the trial, the evidence was used for substantive purposes and no contemporaneous objection was made. *Id.* We concluded that the issue was not properly preserved, stating, "Having established in advance of trial the parameters for which admissible evidence may be used, the trial judge cannot be expected to then infallibly recognize the point at which those evidentiary boundaries have been crossed, and respond *sua sponte* with an unsolicited ruling." *Id.* at 332.

Although the admissibility of the evidence for substantive purposes was not as clearly decided in *Allgeier* as was the limitation in this case, our analysis and reasoning do not change. In *Allgeier*, we explained, "A jury trial is a difficult and often complex undertaking. Like intricate machinery, it has many moving parts. The presiding judge is required to monitor those parts throughout the trial, remaining simultaneously attentive to a number of ongoing concerns." *Id.* Just as in *Allgeier*, we cannot expect the trial judge in this case to "infallibly recognize the point at which those evidentiary boundaries have been crossed, and respond *sua sponte* with an unsolicited ruling." *Id.* Accordingly, we hold that any objection to Det. Wheat's

9

identification of Crouch on the surveillance video was not properly preserved for our review. *See also Long v. Commonwealth*, 2010-SC-000801-MR, 2011 WL 6826377, at *3 n.3 (Ky. Dec. 22, 2011) ("[A] party obviously may not obtain a successful pretrial ruling, acquiesce to the breach of the ruling at trial by failing to object to the violation, and then blithely claim preservation based upon the pretrial ruling. KRE 103(d) does not excuse a party from its duty to contemporaneously bring errors to the trial court's attention in the event the pretrial ruling is violated.").

Evidentiary rulings by the trial court are reviewed for an abuse of discretion. *Little v. Commonwealth*, 272 S.W.3d 180, 187 (Ky. 2008). A trial court abuses its discretion only where its decision is "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999). However, because this issue is unpreserved, we will only reverse if it rises to the level of palpable error and affects the substantial rights of a party. RCr 10.26. "For an error to rise to the level of palpable, it must be easily perceptible, plain, obvious and readily noticeable. Generally, a palpable error affects the substantial rights of the party only if it is more likely than ordinary error to have affected the judgment." *Martin v. Commonwealth*, 409 S.W.3d 340, 344 (Ky. 2013) (internal citations and quotation marks omitted). Even then, relief is appropriate only "upon a determination that manifest injustice resulted from the error." RCr 10.26.

Crouch points to two specific statements made by Det. Wheat which Crouch claims were an improper identification of him. In the first, Det. Wheat testified,

> I was 100% convinced, there was no doubt in my mind at that point that Mr. Crouch was the person that we had seen on those cameras. At that time, I responded to the Commonwealth's Attorney's Office and presented these facts to an attorney, and an arrest warrant was typed up for two counts of burglary second. That was then presented to a district judge, and that warrant was signed and issued for his arrest that afternoon.

Crouch argues that this particular identification was unfairly bolstered and made more prejudicial by Det. Wheat's testimony regarding the Commonwealth's Attorney and the district judge. He asserts that Det. Wheat's testimony allowed the jury to infer that both the Commonwealth's Attorney and the district judge agreed with Det. Wheat's conclusion that Crouch was the person in the video.

The second statement made by Det. Wheat about which Crouch complains is: "This is the surveillance video that we obtained from Mr. Bryant, which shows Mr. Crouch as he extends his arms to climb over Ms. Waddell's fence." Crouch argues that Det. Wheat's identification of him was further and unfairly bolstered by Det. Wheat's additional testimony. Det. Wheat testified that another detective from the Bowling Green Police Department, Det. Tim Buss, who has a specialty in digital investigations, agreed that Crouch was the person shown in Bryant's surveillance video. In fact, Det. Buss's testimony at trial was not that explicit.

11

Finally, Crouch argues that Det. Wheat further bolstered his own improper testimony by stating that he was "very confident" from early in the investigation that Crouch was the suspect and that he had "no doubt in [his] mind" that Crouch was the person shown in Bryant's surveillance video. Crouch argues that the cumulative effect of this testimony made it so that Det. Wheat's improper identification of him was not harmless and resulted in manifest injustice.

This Court has previously held that a witness is permitted to make an identification from photographs and videos, "particularly when the witness is in a position to make an identification based on personal knowledge that is not available to the jury." *Boyd v. Commonwealth*, 439 S.W.3d 126, 132 (Ky. 2014) (citing *Morgan v. Commonwealth*, 421 S.W.3d 388, 392 (Ky. 2014); *United States v. White*, 639 F.3d 331, 336 (7th Cir. 2011)). KRE 602 and 701 govern the admission of this evidence. Under KRE 602, a witness must have "personal knowledge before being allowed to testify about a subject." *Morgan*, 421 S.W.3d at 392. Under KRE 701, opinion testimony by a lay witness must be "[r]ationally based on the perception of the witness; [and] . . . [h]elpful to a clear understanding of the witness' testimony or the determination of a fact in issue."

In this case, Det. Wheat based his identifications of Crouch on his personal interactions with Crouch in the days after the burglary. Immediately prior to the first statement that Crouch alleges is an improper identification, Det. Wheat stated that he identified Crouch's voice in the office building video

12

based on Det. Wheat's personal interaction with Crouch earlier that day. Det. Wheat stated that Crouch had a limp during his previous interaction with him. Det. Wheat noticed that the subject in the office building video also had a limp. Det. Wheat also pointed out numerous similarities between the person shown in the office building video and the person shown in Bryant's surveillance video. Based on all of those factors, including personal knowledge that was not available to the jury that he gained in his interaction with Crouch, Det. Wheat was convinced that Crouch was the person in Bryant's surveillance video. Further, this testimony explained the course of the investigation and why Crouch continued to be a suspect. The trial court thus did not abuse its discretion in permitting Det. Wheat to testify regarding Crouch's identity in Bryant's surveillance video.

The second identification made by Det. Wheat came much later in his testimony, when he was describing screenshots he and Det. Buss had taken from Bryant's surveillance video for comparison purposes. In describing one of the screenshots, he stated that the image showed Crouch reaching his arm up to climb over Waddell's fence. This technically identified Crouch. However, this statement is more accurately classified as a description of the photo rather than a substantive identification. To the extent it was an identification, the trial court did not abuse its discretion in admitting the evidence for the same reasons it did not abuse its discretion in admitting the other identification. Accordingly, we find no error. Because we find no error, we need not determine

13

if Det. Wheat's bolstering of his own testimony created additional improper prejudice.

## C. For cause strike of juror

Crouch next argues that the trial court erred in denying his motion to strike a prospective juror for cause. Specifically, Crouch argues the trial court should have struck this juror because her son is a police officer at the Bowling Green Police Department, the same police department that investigated Crouch's case. Crouch acknowledges that this issue is not preserved and requests palpable error review under RCr 10.26.[4]

At the beginning of voir dire, the juror at issue stated that her son was a Bowling Green Police officer. The trial court asked the juror if that fact would affect her ability to listen to the case. She said it would not. About fifteen minutes later in the voir dire, the juror acknowledged that she recognized some of the names of witnesses who worked for the Bowling Green Police Department. The trial court then asked the juror if she "would have any discomfort in finding Mr. Crouch not guilty if you did not believe the Commonwealth met its burden of proof beyond a reasonable doubt." Although much of her response was too difficult to hear, the juror stated that she "would need to be fair." The juror was not questioned any further by either party regarding this issue.

---

[4] Crouch failed to indicate in writing on his strike sheet whom he would have struck had he not been forced to use a peremptory strike on the juror he believed should have been struck for cause. Instead, he only stated the information orally. This violates our preservation rules. *See Floyd v. Neal*, 590 S.W.3d 245, 250 (Ky. 2019). To the extent Crouch requests we loosen our preservation requirements, we decline to do so.

14

Under the Sixth and Fourteenth Amendments to the United States Constitution and Section 11 of the Kentucky Constitution, a criminal defendant is entitled to an impartial jury. RCr 9.36(1) provides "the standard by which trial courts are to decide whether a juror must be excused for cause." *Sturgeon v. Commonwealth*, 521 S.W.3d 189, 193 (Ky. 2017). Under that rule, "[w]hen there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." RCr 9.36(1). "[W]hether to excuse a juror for cause rests upon the sound discretion of the trial court." *Sturgeon*, 521 S.W.3d at 192.

Regarding juror relationships with the case and the parties, "this Court has identified numerous relationships where bias may be implied despite the juror's ability to remain impartial." *Edmondson v. Commonwealth*, 526 S.W.3d 78, 84 (Ky. 2017) (citing *Ward v. Commonwealth*, 695 S.W.2d 404, 407 (Ky. 1985)). "When these close relationships are identified, the juror should be excused for cause since he or she is 'so susceptible to the relationship as to be predisposed to be more (or less) critical of one side's evidence than the other's.'" *Id.* (quoting *Futrell v. Commonwealth*, 471 S.W.3d 258, 272 (Ky. 2015)).

A close relationship with a police officer, however, is not a relationship that creates this presumptive bias. *Brown v. Commonwealth*, 313 S.W.3d 577, 597 (Ky. 2010) (citing *Penman v. Commonwealth*, 194 S.W.3d 237 (Ky. 2006)). In such cases, we require "additional evidence of bias [such] as the prospective juror's personal acquaintance with the officers involved in the investigation of the case being tried, or his assertion during voir dire that police officers are

15

less apt than other witnesses to lie because they take their oaths more seriously." *Id.* (citing *Shane v. Commonwealth,* 243 S.W.3d 336 (Ky. 2007)). Because there is no presumptive bias, "[t]he court must weigh the probability of bias or prejudice based on the entirety of the juror's responses and demeanor. There is no 'magic question' that can rehabilitate a juror as impartiality is not a technical question but a state of mind." *Id.* (citing *United States v. Wood,* 299 U.S. 123 (1936); *Pennington v. Commonwealth,* 316 S.W.2d 221 (Ky. 1958)).

In this case, the juror at issue was not a member of law enforcement herself. Her son was a police officer at the same police department as that which investigated Crouch. There was no indication that her son was involved in Crouch's investigation in any way. The juror acknowledged that she recognized the names of some of the officers involved in Crouch's investigation, but she did not indicate that (and was not asked whether) she was personally acquainted with any of them. She did not indicate that she would trust police officers more than other witnesses. Instead, when asked, she explained that she understood that she would have to be fair. We cannot say that the trial court abused its discretion in failing to find a "reasonable ground to believe that [the] prospective juror [could] not render a fair and impartial verdict on the evidence." RCr 9.36(1). Thus, the trial court did not err by refusing to strike the juror for cause.

16

### D. Representative jury

Crouch next argues that the trial court erred in failing to provide him with a representative jury.[5] This argument is preserved by pretrial motion. We will review the trial court's actions on this issue for an abuse of discretion. *Miller v. Commonwealth*, 394 S.W.3d 402, 405 (Ky. 2011) (citing *Ratliff v. Commonwealth*, 194 S.W.3d 258 (Ky. 2006)); *see also Brown v. Commonwealth*, 313 S.W.3d 577, 596 (Ky. 2010) ("[T]he trial court is vested with broad discretion to oversee the entire [jury selection] process, from summoning the venire to choosing the petit jury which actually hears and decides the case.").

Prior to Crouch's trial, 375 summonses were sent out to potential jurors. Ninety-one potential jurors did not respond to the summonses, and of those that responded, 67 potential jurors were deemed qualified. Of those that qualified for jury service, none were people of color. According to Crouch, people of color make up 17% of Warren County's population. Crouch objected to the jury pool, arguing that because there were no non-white people in the pool, it was not a representative jury. Crouch asked the trial court to send the Sheriff's Office to contact those potential jurors who did not respond to the summonses to gather additional responses. The trial court, despite having done this in the past, declined to do so on this occasion.

---

[5] Although Crouch is white, he has standing to challenge the exclusion of non-white people from his jury pool. *Peters v. Kiff*, 407 U.S. 493, 504 (1972) ("[W]hatever his race, a criminal defendant has standing to challenge the system used to select his grand or petit jury, on the ground that it arbitrarily excludes from service the members of any race, and thereby denies him due process of law.").

The Sixth and Fourteenth Amendments to the United States Constitution entitle defendants to an impartial jury drawn "from a fair cross section of the community." *Duren v. State of Missouri,* 439 U.S. 357, 359 (1979) (citing *Taylor v. Louisiana,* 419 U.S. 522 (1975)). However, "[d]efendants are not entitled to a jury of any particular composition." *Taylor,* 419 U.S. at 538. Instead, "the jury wheels, pools of names, panels, or venires from which juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.* In order to establish a prima facie violation of his right to a representative jury, a defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Rodgers v. Commonwealth,* 285 S.W.3d 740, 759 (Ky. 2009) (quoting *Duren,* 439 U.S. at 364).

We have previously held that African Americans "constitute a distinctive group for jury selection purposes," and we believe that the same holds true for the more general category of "people of color." However, Crouch has not met his burden to show that people of color are generally or regularly "unfairly and unreasonably underrepresented" on Warren County jury panels. *Miller v. Commonwealth,* 394 S.W.3d 402, 410 (Ky. 2011). Nor has he "provide[d] any proof that the alleged underrepresentation is due to systemic exclusion." *Id.* "It is not enough to merely allege a particular jury failed to represent the

18

community. 'A showing of underrepresentation must be predicated on more than mere guesswork. Such a showing requires competent proof (usually statistical in nature).'" *Id.* at 409 (quoting *United States v. Lara,* 181 F.3d 183, 192 (1st Cir. 1999)). Crouch has made no such showing. Accordingly, the trial court did not err when it overruled Crouch's objection to the jury panel.

We further note that, according to the trial court, Crouch's trial was only the second trial to be held in the Commonwealth after the court system reopened during the first year of the Covid-19 pandemic. Given the circumstances of the pandemic, as well as Crouch's unwavering request for a fast and speedy trial, we cannot hold that the trial court abused its discretion in refusing Crouch's request to send the Sheriff out to gather responses from those potential jurors who did not respond to the summonses. Accordingly, we find no error on this issue.

### E. Cumulative error

Finally, Crouch argues his conviction should be reversed due to cumulative error. Under the cumulative error doctrine, "multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair." *Brown v. Commonwealth,* 313 S.W.3d 577, 631 (Ky. 2010). Because we have found no errors, there cannot be cumulative error.

## III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the Warren Circuit Court.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Robert Chung-Hua Yang
Department of Public Advocacy

COUNSEL FOR APPELLEE:

Daniel J. Cameron
Attorney General of Kentucky

Aspen Caroline Carlisle Roberts
Assistant Attorney General