RENDERED: MARCH 29, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1305-MR

MICHAEL TORRENCE                                              APPELLANT

v.                      APPEAL FROM JEFFERSON CIRCUIT COURT
HONORABLE AUDRA J. ECKERLE, JUDGE
ACTION NOS. 16-CR-001550 AND 18-CR-000152

COMMONWEALTH OF KENTUCKY                           APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: ACREE, EASTON, AND JONES, JUDGES.

ACREE, JUDGE: Michael Torrence, Appellant, appeals the Jefferson Circuit Court's Opinion and Order wherein the circuit court denied Appellant's motion to vacate his conviction. Appellant argues he received ineffective assistance from both his trial counsel and his appellate counsel during the underlying proceedings and, accordingly, that the circuit court erred in denying his motion. We affirm.

## BACKGROUND

A jury convicted Appellant of assault in the first degree, possession of a handgun by a convicted felon, and being a first-degree persistent felony offender. He was sentenced to twenty-five years. The Supreme Court affirmed the judgment of conviction in *Torrence v. Commonwealth*, 603 S.W.3d 214 (Ky. 2020).[1]

Appellant then filed a motion to vacate his convictions pursuant to RCr[2] 11.42.[3] He alleged both his trial and appellate counsel provided ineffective assistance; Appellant levied five allegations of ineffective assistance against his trial counsel and five against his appellate counsel. He also argued the cumulative effect of these deficiencies in his defense requires his convictions be vacated.

The circuit court denied Appellant's motion and, he now appeals. He alleges a variety of errors. Additional facts relevant to his arguments are included.

## STANDARD OF REVIEW

"In reviewing an RCr 11.42 proceeding, the appellate court reviews the trial court's factual findings for clear error while reviewing the application of

---

[1] Section 110 of the Kentucky Constitution requires that appeals from sentences of imprisonment for twenty years or more be taken directly to the Kentucky Supreme Court. KY. CONST. § 110(2)(b).

[2] Kentucky Rules of Criminal Procedure.

[3] "A prisoner in custody under sentence or a defendant on probation, parole or conditional discharge who claims a right to be released on the ground that the sentence is subject to collateral attack may at any time proceed directly by motion in the court that imposed the sentence to vacate, set aside or correct it." RCr 11.42(1).

its legal standards and precedents de novo."[4] *Ford v. Commonwealth*, 628 S.W.3d 147, 156 (Ky. 2021) (citing *Commonwealth v. Pridham*, 394 S.W.3d 867, 875 (Ky. 2012)). The trial court's findings of fact are not clearly erroneous where substantial evidence supports them. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003) (citing *Commonwealth v. Deloney,* 20 S.W.3d 471, 474 (Ky. 2000)). Substantial evidence is that evidence which, when "taken alone or in the light of all the evidence it has sufficient probative value to induce conviction in the minds of reasonable men." *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308

---

[4] As the Commonwealth correctly notes, Appellant has submitted a deficient brief. An appellant's brief must include a statement of the case which consists not only of a "chronological summary of the facts and procedural events necessary to an understanding of the issues presented by the appeal," but this summary must also include "ample references" to the specific locations in the record which support the facts presented in the statement of the case. Kentucky Rules of Civil Procedure (CR) 76.12(4)(c)(iv). And, an appellant's arguments must include "ample supportive references to the record" and shall be prefaced with a statement of preservation, *i.e.*, "a statement with reference to the record showing whether the issue was properly preserved for review and, if so, in what manner." CR 76.12(4)(c)(v). Appellant's brief is devoid of any citations to the appellate record.

"Compliance with CR 76.12 is mandatory." *Smothers v. Baptist Hosp. E.*, 468 S.W.3d 878, 881-82 (Ky. App. 2015) (citing *Hallis v. Hallis*, 328 S.W.3d 694, 696 (Ky. App. 2010)). Procedural rules function as "lights and buoys to mark the channels of safe passage and assure an expeditious voyage to the right destination." *Louisville and Jefferson County Metropolitan Sewer Dist. v. Bischoff*, 248 S.W.3d 533, 536 (Ky. 2007) (quoting *Brown v. Commonwealth*, 551 S.W.2d 557, 559 (Ky. 1977)). However, this does not mean Appellant's brief must be automatically struck. Rather, we are presented with three options: "(1) to ignore the deficiency and proceed with the review; (2) to strike the brief or its offending portions, CR 76.12(8)(a); or (3) to review the issues raised in the brief for manifest injustice only[.]" *Hallis*, 328 S.W.3d at 696 (citing *Elwell v. Stone*, 799 S.W.2d 46, 47 (Ky. App. 1990)).

We choose not to strike Appellant's brief and to proceed with review. This decision should not be taken as precedent for future questions regarding deficient appellate briefing.

(Ky. 1972) (citing *Blankenship v. Lloyd Blankenship Coal Co., Inc.*, 463 S.W.2d 62 (Ky. 1970)).

## ANALYSIS

### I. *Ineffective Assistance of Trial Counsel*

For a criminal defendant to overturn his conviction because of a trial counsel's ineffective assistance courts engage in the two-step analysis provided by *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S. Ct. at 2064.

First, he must demonstrate counsel's performance was "deficient." *Id.* This means "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* However, courts strongly presume that "counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S. Ct. at 2065 (quoting *Michael v. State of Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164, 100 L. Ed. 83 (1955)). "[A] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of

counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. Stated succinctly, "[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms." *Id*.

The second stage of the *Strickland* analysis requires the defendant to demonstrate that counsel's deficient performance "prejudiced the defense." *Id*. at 687, 104 S. Ct. at 2064. He must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. This is a high hurdle for the criminal defendant to clear. It is not enough that a different outcome may have resulted but for counsel's deficiencies; this approach would give the defendant "too great of an advantage." *Brown v. Commonwealth*, 253 S.W.3d 490, 499 (Ky. 2008) (citing *Lockhart v. Fretwell*, 506 U.S. 364, 369-70, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993)). "Instead the question should be absent counsel's errors, would the factfinder have had a reasonable doubt respecting guilt?" *Id*. (citing *Strickland*, 466 U.S. at 695, 104 S. Ct. at 2068-69).

A. *Juror Bias*

Appellant first argues the performance of his trial counsel was deficient because he failed to object to the inclusion of a juror on the jury panel Appellant believes was biased. The Commonwealth stated during its opening that an individual named Val Morris would be its primary trial witness. After opening

statements but before trial, Juror #287183 informed the court that she knew Morris, but only became aware of this when she saw Morris in person at the courthouse. Neither Appellant's attorney nor the Commonwealth objected to inclusion of the juror.

Under our criminal rules, "[w]hen there is a reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused and not qualified." RCr 9.36(1). A degree of bias sufficient to disqualify a juror "is implied from any close relationship, familial, financial, or situational, with any party, counsel, victim, or witness[.]" *Sholler v. Commonwealth*, 969 S.W.2d 706, 709 (Ky. 1998) (citing *Ward v. Commonwealth*, 695 S.W.2d 404 (Ky. 1985)). However, a "mere social acquaintanceship" does not indicate such bias without "other indicia of a relationship so close as to indicate the probability of partiality." *Id*. In *Sholler*, a juror knew the Commonwealth's attorney "socially through mutual friends and their mutual membership in a large card club[,]" resulting in the juror and the Commonwealth's attorney playing cards together approximately one time per year; the Kentucky Supreme Court determined it was not error for the trial court to decline to strike the juror for this attenuated acquaintanceship. *Id*.

We believe the relationship between Juror #287183 and Morris to be similarly attenuated. The juror stated she did not know Morris's last name and that

Morris had dated the juror's nephew. Juror #287183 did not believe she and Morris were friends, but rather "acquaintances." She had not seen Morris in over four years. The juror and Morris were, at best, social acquaintances of the kind that did not demonstrate bias on the juror's behalf. Because the relationship between the juror and the witness did not prejudice Appellant, it was not error for the trial court to deny Appellant's RCr 11.42 motion on this basis.

**B.   _Failure to Call a Witness_**

Appellant brings a second argument related to a juror. He argues he received ineffective assistance due to his counsel's failure to call an additional witness to examine the juror's potential bias related to a witness's alleged recognition of a juror. During voir dire, Juror #2071060 did not indicate she knew Appellant. When Tatiana Turner – with whom Appellant has a child – testified to corroborate Appellant's alibi, she appears to have recognized a juror. Turner had been sequestered prior to being called and thus the jury did not see her until she gave her testimony. The jury returned guilty verdicts on a Friday, and Turner told Appellant's mother that weekend that she recognized Juror #2071060. Appellant's trial counsel advised the court of this on Monday, the last day of the trial.

The trial court took proof on this issue, questioning both Juror #2071060 and Turner. The juror was adamant that she did not know Appellant and had never seen him before. She did, however, indicate that she knew Turner, but

had not seen her in over five years. The juror also stated she did not know Appellant and Turner knew each other. However, Turner stated that Juror #2071060 knew Turner's half-sister, Waynesia,[5] and believed the juror would have seen Appellant while Turner and Appellant were dating. Appellant's trial counsel did not call Waynesia as a witness, and the trial court determined the relationship between Turner and Juror #2071060 was so distant that it did not indicate bias. The trial court subsequently denied Appellant's motion for judgment notwithstanding the verdict and motion for new trial.

The Supreme Court affirmed this conclusion on direct appeal, stating "it was not unreasonable for the court to determine the juror possessed the mental attitude of 'appropriate indifference' required to sit on a jury." *Torrence*, 603 S.W.3d at 221 (citing *Gabbard v. Commonwealth*, 297 S.W.3d 844, 854 (Ky. 2009)). The Supreme Court notes that "[i]t seems as if Waynesia would have been important to corroborate or deny that Turner and the juror had spent substantial time together." *Id*. In addition to Waynesia not being called to testify at trial, she was not called to testify at the hearing on Appellant's motion for a judgment

---

[5] As the Supreme Court notes, Turner also claimed Waynesia as a half-sister. *Torrence*, 603 S.W.3d 214, 219. However, the juror testified that Waynesia and Turner were not "real sisters." *Id*. In an effort to establish a familial relationship, defense counsel introduced birth certificates; however, "the birth certificates contained empty fields where the child's father would be indicated." *Id*.

notwithstanding the verdict and motion for a new trial; the Supreme Court declined to speculate as to the content of Waynesia's testimony, had she testified. *Id.*

We, too, decline to speculate whether Waynesia's testimony would have proven Appellant and Juror #2071060 knew one another or would have otherwise revealed the juror was biased against Appellant. Appellant has not overcome the presumption that trial counsel's decision to not call Waynesia was a component of trial strategy.

Unlike the situation with the first objection to a juror, Juror #287183, Appellant's counsel did contest the result of the trial upon discovery of the issue with Juror #2071060. Indeed, defense counsel filed motions for a judgment notwithstanding the verdict and for a new trial, examined witnesses during hearings on those motions, and introduced exhibits – including birth certificates – attempting to establish a closer link between Juror #2071060, Waynesia, and Turner. *Id.* at 218-19. Accordingly, the circuit court did not err in denying Appellant's RCr 11.42 motion on these issues.

## C. *Failure to Impeach Victim*

Next, Appellant argues he received ineffective assistance because his trial attorney did not "fully impeach" the victim, Gerrard Thomas. According to the record, Appellant and Thomas were together inside a vehicle and Thomas was shot upon exiting the vehicle or shortly thereafter. He argues trial counsel should

have questioned Thomas regarding previous convictions for lying to the police. Further, he argues trial counsel should have impeached Thomas for his claim that Thomas opened the door and exited the still-moving vehicle, arguing this is "literally impossible" in newer vehicles.

As the circuit court correctly determined, Appellant failed to offer evidence that either of these propositions is true. Appellant presented no documentation to demonstrate Thomas had been arrested for making false statements to the police. Nor does Appellant provide any proof the doors on late model automobiles are impossible to open while the vehicle is moving. An RCr 11.42 motion "shall state specifically the grounds on which the sentence is being challenged and the facts on which the movant relies in support of such grounds." RCr 11.42(2). Without proof to support these propositions, the circuit court did not err in denying Appellant's motion for the alleged failure to impeach Thomas.

## D.   _Failure to Call Expert Witnesses_

Appellant argues he was denied effective assistance because his trial counsel did not call various experts to testify. He believes his attorney should have called experts on the subjects of cell towers to refute the Commonwealth's cell tower locational data placing Appellant at the scene of the shooting. He also argues his counsel should have called a ballistics expert and a medical expert.

At trial, the Commonwealth presented its cell tower locational data evidence through Detective Steven Snider; despite Detective Snider not being an expert witness on this subject, the trial court permitted introduction of this evidence through him because "anyone could read the records, open a Google™ Maps program on a computer, enter the addresses, locations, or coordinates including latitude and longitude, and obtain the same results." *Torrence*, 603 S.W.3d at 225. However, as the circuit court noted and as the Commonwealth notes in its brief, Appellant's trial counsel effectively cross-examined Detective Snider; Detective Snider admitted that a cell phone will search for the strongest cell tower signal rather than the closest. We agree with Appellee that Appellant cannot comply with *Strickland*'s requirement that he was prejudiced by his trial counsel not calling a witness to counter the testimony of Detective Snider.

Regarding trial counsel's decision not to call a ballistics or medical expert, we agree with the Commonwealth that Appellant cannot demonstrate how he was prejudiced by this decision; *i.e.*, that the outcome would have been different with such expert testimony. Appellant's trial attorney focused on placing Appellant in a different location than where the shooting occurred. The decision to do so was a matter falling within the broad latitude granted to attorneys in matters of trial strategy. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. We detect no error in the circuit court's conclusion on this point.

## E.  *Failure to Object to Alleged Prosecutorial Misconduct*

For Appellant's final argument alleging ineffective assistance of his trial counsel, Appellant asserts counsel should have objected to three statements the Commonwealth made which Appellant asserts were false or unproven.  The circuit court determined Appellant mischaracterized these statements in his motion, or that the statements were inferences the Commonwealth was permitted to make.  Appellant categorizes the Commonwealth's statements as "misconduct."

The Commonwealth made the first of these statements during its opening statement:  "Before the victim had a chance to talk to anybody at the hospital, he gave a basic description of the defendant."  Appellant's attorney did not object to this statement, and Appellant asserts this statement is not true.  As the Supreme Court found, Thomas's sister and girlfriend visited him in the hospital and showed Thomas a picture of Torrence they had obtained from social media.  *Torrence*, 603 S.W.3d at 229.  Later that day, the police visited Thomas and he identified Appellant from a photo array.  *Id.*  And Appellant notes that, during a pretrial hearing on a motion to suppress Thomas's identification of Appellant from the photo array, his attorney argued Thomas only identified Appellant after he was shown Appellant's picture by his family members at the hospital.

The second statement also appeared during the Commonwealth's opening statement.  The Commonwealth stated Morris would testify at trial that

she had heard an argument about home break-ins before Morris tended to Thomas. Appellant's counsel did not object and, ultimately, Morris did not testify on the subject.

The Commonwealth made the third statement during closing arguments. The vehicle Appellant drove at the time of the shooting was a vehicle Appellant's girlfriend rented. At trial, an employee of the rental agency, Angela Fletcher, testified that the car was returned the day after Thomas was shot, and that she was not aware of the car having anything wrong with it upon its return. During its closing argument, the Commonwealth stated that, after the shooting, that Appellant returned the vehicle to the rental company and "let the car-rental place clean it up."

Appellant did not receive ineffective assistance of counsel for not objecting to these statements, because Appellant cannot demonstrate he was prejudiced by these omissions. "Opening and closing statements are not evidence and wide latitude is allowed in both." *Wheeler v. Commonwealth*, 121 S.W.3d 173, 180 (Ky. 2003) (citing *Slaughter v. Commonwealth*, 744 S.W.2d 407 (Ky. 1987)). "Counsel may draw reasonable inferences from the evidence and propound their explanations of the evidence and why the evidence supports their particular theory of the case." *Id*. at 180-81 (citing *Tamme v. Commonwealth*, 973 S.W.2d 13 (Ky. 1998)).

These statements fall within the bounds afforded attorneys in making opening and closing statements. However, assuming, *arguendo*, that these statements were beyond these bounds, Appellant still is unable to demonstrate he was prejudiced by his attorney's failure to object to them at trial. Improper statements made by the prosecution during a criminal trial only warrant reversal of a defendant's convictions if those statements rise to the level of "flagrant misconduct." *Mayo v. Commonwealth*, 322 S.W.3d 41, 56 (Ky. 2010). To determine whether a prosecutor's improper statements constitute flagrant misconduct, our courts use a four-factor test: "'(1) whether the remarks tended to mislead the jury or to prejudice the accused; (2) whether they were isolated or extensive; (3) whether they were deliberately or accidentally placed before the jury; and (4) the strength of the evidence against the accused.'" *Id.* (quoting *Hannah v. Commonwealth*, 306 S.W.3d 509, 518 (Ky. 2010)).

Whether the statements were deliberately stated to mislead the jurors, we cannot say, but we do not believe they had a tendency to do so. For example, although the Commonwealth misstated in its opening that Thomas was able to provide a description of Appellant before having "a chance to talk to anybody," there is no proof this was deliberate. As the Supreme Court put it when complimenting Appellant's counsel's defense:

> When Thomas denied multiple times during the
> Commonwealth's questioning that he saw the single photo

-14-

before he saw the photo array, and even went so far as to claim he had not seen the single photo at any time before he testified, [Appellant's] counsel seized the opportunity. Under capable cross-examination by defense counsel, Thomas changed his mind and his testimony. With some skilled questioning, Thomas conceded seeing the photo first.

Thomas acknowledged seeing the single photo when confronted with an audio recording of his statement to the police. After hearing his own words on audio tape played for the jury, Thomas acknowledging [sic] seeing the single photo first. The Commonwealth's key witness was caught over-stating a claim and forced to backtrack on testimony given minutes earlier that he never saw the single photo prior to trial. In the best possible light, he was mistaken, or perhaps, when viewed in a different light, [Appellant's] counsel caught him in an outright lie.

*Torrence*, 603 S.W.3d at 230-31.

As for the second factor, each statement was isolated, and none was extensive. The Commonwealth's statements about a photo line-up identification, about Morris's expected testimony of break-ins, and about the rental car company cleaning the vehicle Appellant used could hardly be more isolated. None were extensive in the sense that they were more than passing references of what the Commonwealth expected to come out at trial.

If we presume the third factor – that the Commonwealth did not accidentally make these allegedly false statement – there is still the fourth factor that Appellant cannot overcome.

-15-

The fourth factor is the strength of the evidence against Appellant. This factor weighs overwhelmingly against finding that these three statements prejudiced him. The evidence presented against Appellant was strong. The victim, Thomas, identified him as the shooter by description, by his nickname, and in a photo array. Thomas described the car the shooter drove which was similar to the vehicle Appellant's girlfriend rented and returned to the agency the day after the shooting. There was cell tower data reflecting Appellant's proximity to the shooting and refuting his alibi witness's testimony that he was elsewhere at the time of the shooting. *Id.* at 226 ("Cell tower reports do not show exactly where someone's cell phone was at specified times, but often do show where the cell phone was not.").

None of these statements rise to the level of flagrant misconduct. Appellant was not prejudiced by his trial attorney's failure to object to these three statements; thus, the circuit court did not err in denying Appellant's motion relying on this argument.

## II.   *Ineffective Assistance of Appellate Counsel*

"[T]he Due Process Clause of the Fourteenth Amendment to the United States Constitution, and through it the Sixth Amendment, entitle criminal defendants to the effective assistance of counsel not only at trial, but during a first appeal as of right." *Hollon v. Commonwealth*, 334 S.W.3d 431, 434 (Ky. 2010)

(citing *Evitts v. Lucey*, 469 U.S. 387, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985)). As in an ineffective assistance of trial counsel claim, a defendant alleging ineffective assistance of appellate counsel "must establish that counsel's performance was deficient[.]" *Id*. at 436. This means the defendant must overcome "a strong presumption that appellate counsel's choice of issues to present to the appellate court was a reasonable exercise of appellate strategy." *Id*. Only where issues not presented on appeal are "clearly stronger" than those actually presented will a defendant overcome this presumption. *Id*. (quoting *Smith v. Robbins*, 528 U.S. 259, 288, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000)). Claims of ineffective assistance of appellate counsel are "not premised on inartful arguments or missed case citations" and, instead, counsel must have "omitted completely" an argument he ought to have raised on direct appeal. *Id*. As in the analysis for ineffective assistance of trial counsel, a defendant must also establish he was prejudiced by the performance of appellate counsel; he must demonstrate "absent counsel's deficient performance there is a reasonable probability that the appeal would have succeeded." *Id*. (citing *Smith*, 528 U.S. 259, 120 S. Ct. 746).

Accordingly, we must compare the issues Appellant's counsel actually raised on appeal with those Appellant asserts should have been raised on appeal.

Appellant raised three issues in his direct appeal to the Kentucky

Supreme Court:

> (1) failing to remove a juror and failing to grant a mistrial concerning said juror, (2) allowing a lay witness to testify as to historical cell tower data and several other related sub-issues, and (3) failing to suppress the victim's identification of [Appellant] in a police photo array and in court.

*Torrence*, 603 S.W.3d at 217.

## A. *Failure to Contest Improper Statements on Appeal*

Appellant alleges his appellate counsel's failure to contest on appeal an additional statement made by the Commonwealth during closing arguments requires his sentence be vacated. The Commonwealth stated in closing that Thomas "was telling people like Val Morris that he was shot over a break-in and that it was Man-Man that shot him." "Man-Man" is Appellant's nickname. *Id*. at 229. Trial counsel objected to this statement because Morris never so testified. The Commonwealth directed the circuit court to the language used; specifically that Thomas told "*people like* Val Morris" and not necessarily Morris herself. The trial court overruled the objection.

Appellant argues he received ineffective assistance of appellate counsel because this issue was not raised on direct appeal. We disagree. We cannot say the above objection would have been a clearly stronger argument on appeal sufficient to overcome the presumption that its omission was a component

-18-

of appellate strategy. Appellate counsel chose those issues which he or she believed would afford Appellant the strongest chance of success on appeal. It was not error for the circuit court to decline to grant Appellant's motion on this point.

**B.** *__Failure to Argue Discovery and Brady Issues on Appeal__*

Next, Appellant argues he received ineffective assistance of appellate counsel for failing to raise on appeal discovery and *Brady*[6] violations. First, Appellant alleges the Commonwealth failed to turn over the cell phone records that Detective Snider used to create a map, shown to the jury at trial, establishing the approximate location of Appellant's cellphone – in the proximity of the shooting – when Thomas was shot. He argues trial counsel filed a pretrial motion for production of the phone records, but that the Commonwealth did not produce them.

Appellant does not direct us to where in the record this pretrial motion appears. Even if such motion was filed, we cannot say the outcome of Appellant's direct appeal would have been different had appellate counsel raised this issue on appeal. "[A] discovery violation serves as sufficient justification for setting aside a conviction when there is a reasonable probability that if the evidence were

---

[6] Per *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963) and its progeny, including *United States v. Bagley*, 473 U.S. 667, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985) and *Kyles v. Whitley*, 514 U.S. 419, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995), prosecutors must disclose materially exculpatory evidence in the possession of the government to criminal defendants.

disclosed the result would have been different." *Chestnut v. Commonwealth*, 250 S.W.3d 288, 297 (Ky. 2008) (citing *Wood v. Bartholomew*, 516 U.S. 1, 5-6, 116 S. Ct. 7, 10, 133 L. Ed. 2d 1 (1995)). As noted previously, appellate attorneys are granted wide latitude in selecting those arguments which they believe will be most effective on appeal. Our review does not reveal Appellant's appellate counsel was outside those bounds in declining to pursue this issue.

Second, Appellant alleges the Commonwealth withheld a 911 call from him, despite requesting it in discovery. On the second day of trial, Appellant moved to dismiss all charges on the basis that Appellant had not yet received the requested 911 call. The Commonwealth responded that it, too, had not yet received the 911 call, though prosecution had requested it. The next day, the Commonwealth obtained the call, and immediately turned it over to Appellant's trial counsel. *Brady* only applies to "the discovery, after trial, of information which had been known to the prosecution but unknown to the defense." *United States v. Agurs*, 427 U.S. 97, 103, 96 S. Ct. 2392, 2397, 49 L. Ed. 2d 342 (1976)). Because the Commonwealth, once it obtained the call, turned it over to Appellant before trial, *Brady* is not implicated, and thus it was sound appellate strategy to not argue this point. This decision did not prejudice Appellant on appeal.

*C.*   *Failure to Raise on Appeal Limitations Upon Impeachment of Victim*

Appellant next argues he did not receive effective assistance of appellate counsel because his appellate counsel did not raise on appeal limitations imposed by the trial court regarding cross-examination. Before defense counsel cross-examined the crime scene technician, the Commonwealth moved to prohibit cross-examination regarding drug paraphernalia found on Thomas. Defense counsel argued the paraphernalia was relevant as to whether Thomas was under the influence of drugs at the time and, therefore, whether Thomas's recollection of events was reliable. The trial court determined the drug paraphernalia was not relevant and appellate counsel did not raise the issue on appeal.

The Commonwealth offers *Brown v. Commonwealth*, which the circuit court also relied on for support, for the proposition that a crime victim's use of drugs is not relevant unless the crime was drug-related. 313 S.W.3d 577, 625 (Ky. 2010). The crime at issue in *Brown* was murder and, therefore, the victim obviously did not testify at trial. *See id.* As the Supreme Court stated in *Brown*, "[t]he mere fact that a murder victim may have used drugs, does not, without more, permit a reasonable inference that her murder was drug-related." *Id.* We do not believe the general rule stated by the circuit court and the Commonwealth can be extrapolated from the narrower rule in *Brown*.

However, the trial court's determination that the drug paraphernalia was not relevant is not now before this Court. Rather, Appellant's appellate counsel's performance is the subject of our review. Though the circuit court's application of *Brown* was in error, we agree with the circuit court that Appellant is not entitled to reversal for his appellate counsel's decision not to pursue the argument regarding Thomas's drug paraphernalia. It is an unsound argument.

Appellant wanted to ask about drug paraphernalia found on Thomas's person. That might have permitted an inference that Thomas was a drug user. However, it would require the impermissible drawing of inference upon inference that he was under the influence of drugs at the time of the shooting. *Southworth v. Commonwealth*, 435 S.W.3d 32, 45 (Ky. 2014) ("inferences cannot be drawn from other inferences"). We believe not including this argument was sound appellate strategy. This is not a basis for finding ineffective assistance of appellate counsel.

**D.   *Failure to Raise on Appeal Issues Regarding Testimony of Detective Snider***

Appellant's final two arguments asserting ineffective assistance of appellate counsel involve the trial testimony of Detective Snider. First, Appellant argues his appellate counsel should have argued on appeal the circuit court's overruling of his trial counsel's hearsay objection. At trial, Detective Snider testified that witnesses to the shooting told him the shooter drove a gray, late-model Ford Explorer. Defense counsel objected, and the trial court sustained the

objection. However, the trial court noted that the jury had already heard that information through another witness; Thomas himself testified the vehicle was a gray, newer Ford Explorer. Because the trial court sustained defense counsel's objection, we are not sure exactly what error Appellant believes his appellate counsel should have raised. We assume he contests the statement by the trial court that the jury had already heard the information from another witness.

Regardless, we cannot say Appellant received ineffective assistance from his appellate counsel for choosing other arguments to pursue, considering the jury had already heard the contents of the hearsay statement through Thomas's testimony. Even if the objection had been overruled and the testimony admitted, and even if the trial court overruling the objection was in error, there is a great likelihood the Supreme Court, in a direct appeal, would consider it harmless error because it was merely cumulative of previously admitted evidence. *Torrence v. Commonwealth*, 269 S.W.3d 842, 846 (Ky. 2008) ("the erroneous admission of cumulative evidence is a harmless error"). Not presenting this argument to the Supreme Court was not ineffective assistance of appellate counsel.

The second testimonial statement by Detective Snider which Appellant believes his attorney should have raised on appeal relates to the contents of Appellant's cell phone. Detective Snider testified that Appellant sent a text message in which he said he was selling a Glock 40. Trial counsel objected,

asserting the text message was not relevant because it had not been established that such firearm was used in the shooting. Trial counsel also argued the testimony was offered to prove Appellant's character using evidence of a prior bad act and thus was impermissible under KRE[7] 404(b). The trial court overruled the objection, and appellate counsel did not raise the issue.

Again, this argument is not clearly stronger than those appellate counsel chose to pursue on appeal. Under KRE 404(b), "[e]vidence of other crimes, wrongs, or acts is not admissible to provide the character of a person in order to show action in conformity therewith." KRE 404(b). However, such evidence may be admissible in a variety of circumstances, including if the evidence is "offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" KRE 404(b)(1). Appellant's text message could, conceivably, fit within more than one of these exceptions not to mention that selling a firearm is not *per se* illegal. Accordingly, appellate counsel was not ineffective for not raising this issue on appeal, as we cannot say this decision was outside the bounds of what would be considered sound appellate strategy to use limited argument briefing space to the better arguments that were presented.

---

[7] Kentucky Rules of Evidence.

### III. *Cumulative Error*

Finally, Appellant argues that the cumulative effect of the claimed errors is legally sufficient to overturn his conviction. Under the doctrine of cumulative error, "'multiple errors, although harmless individually, may be deemed reversible if their cumulative effect is to render the trial fundamentally unfair.'" *Commonwealth v. Harbin*, 602 S.W.3d 166, 174 (Ky. App. 2019) (quoting *Brown*, 313 S.W.3d at 631). Here, however, and as explained above, though we may find error in some of the circuit court's analysis, we disagree with none of its conclusions.

Taken together these actions or omissions by either Appellant's trial counsel or his appellate counsel are not so prejudicial as to be considered the equivalent of depriving Appellant of the constitutional right to counsel. As the Supreme Court stated in *Brown*, "[w]here . . . none of the errors individually raised any real question of prejudice, we have declined to hold that the absence of prejudice plus the absence of prejudice somehow adds up to prejudice." 313 S.W.3d at 631 (citing *Furnish v. Commonwealth*, 95 S.W.3d 34 (Ky. 2002)). We similarly decline to undertake a similar calculation here.

### CONCLUSION

For the foregoing reasons, we affirm the Jefferson Circuit Court's October 7, 2021 Opinion and Order.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Michael Torrence, *pro se*
West Liberty, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Mark D. Barry
Assistant Attorney General
Frankfort, Kentucky